**In re KOOPAL, Clarence S. and Koopal, Roberta L., Debtors.**

**Bankruptcy No. 98–20578.**

United States Bankruptcy Court, D. Idaho.

Oct. 16, 1998.

Bruce A. Anderson, Elsaesser Jarzabek Anderson & Marks, Sandpoint, ID, for Debtors.

R. Wayne Sweney, Lukins & Annis, Coeur d'Alene, ID, for Home Security Bank and USB Leasing Co.

## MEMORANDUM OF DECISION

TERRY L. MYERS, Bankruptcy Judge.

This matter comes before the Court upon the motion of the Debtors ("the Koopals") to avoid the lien of USB Leasing Co. ("USB") and Home Security Bank ("HSB") (collectively "the Creditors") under § 522(f).[1] The Koopals contend that the Creditors' lien is a judicial lien which impairs a homestead exemption to which they are otherwise entitled. The Creditors timely filed an objection under Rule 4003, arguing that the Koopals are not entitled to the Idaho homestead exemption they claimed. This Memorandum of Decision constitutes the Court's Findings of Fact and Conclusions of Law. Fed.R.Bankr.P. 9014, 7052; Fed. R.Civ.P. 52.

### FACTS

The Koopals filed a voluntary chapter 7 petition on June 25, 1998, and claimed a homestead exemption in certain real property (a house and three acres) located at 17728 Dufort Road in Priest River, Bonner County, Idaho ("the Priest River Property"). The Priest River Property has a fair market value in the range of $180,000.00 to $200,000.00. The Priest River Property secures a real estate contract for approximately $155,-000.00, and is also subject to a judicial lien asserted by the Creditors.

---

1. Unless otherwise indicated, all references to "code," "title," "chapter" and "section" are to the Bankruptcy Code, 11 U.S.C. §§ 101—1330.

The judicial lien arose from a judgment recorded in the real property records of Bonner County, Idaho, on May 6, 1997. In that judgment, HSB was awarded an amount in excess of $174,000.00 and USB was awarded over $32,000.00. Pursuant to Idaho Code § 10-1110,[2] the filing of this judgment in the county records created a lien against all the Koopals' real property located within the county, including the Priest River Property used by the Koopals as their residence until early 1998.

In December 1997, Mr. Koopal had a telephone conversation with his brother-in-law who operated a dairy facility in Jerome, Idaho. Mr. Koopal needed employment and he agreed to move to Jerome and work for his wife's brother. The job was anticipated to last six months. Mr. Koopal had no clear idea of what work he would do after his six month term of employment at the dairy, but hoped his brother-in-law might help him find additional work in the southern Idaho area.

Mr. Koopal testified that he moved to Jerome in December 1997 and his family moved to Jerome in January 1998,[3] where they lived in a house that was provided by Mrs. Koopal's brother. The Koopals made sporadic visits back to northern Idaho for purposes of maintaining the Priest River Property, which they had placed on the market for sale. The Koopals re-established physical residence in the Priest River Property only after filing bankruptcy.[4]

**2.** A transcript or abstract of any judgment or decree of any court of this state or any court of the United States the enforcement of which has not been stayed as provided by law, if rendered within this state, certified by the clerk having custody thereof, may be recorded with the recorder of any county of this state, who shall immediately record and docket the same as by law provided, and from the time of such recording, and not before, the judgment so recorded becomes a lien upon all real property of the judgment debtor in the county, not exempt from execution, owned by him at the time or acquired afterwards at any time prior to the expiration of the lien; ... The lien resulting from recording of a judgment ... continues five (5) years from the date of the judgment, unless the judgment be previously satisfied, or unless the enforcement of the judgment be stayed upon an appeal as provided by law .... Idaho Code § 10-1110.

## DISCUSSION

Debtors in Idaho are authorized to claim state statutory exemptions, including a homestead exemption. *In re Millsap*, 122 B.R. 577, 579, 91 I.B.C.R. 5, 7 (Bankr.D.Idaho 1991); § 522(b); Idaho Code §§ 11-609, 55-1001 *et seq.*

◼ Idaho Code § 55-1001(2) provides:

"Homestead" means and consists of the dwelling house or the mobile home in which the owner resides or intends to reside, with appurtenant buildings, and the land on which the same are situated and by which the same are surrounded, or improved, or unimproved land owned with the intention of placing a house or mobile home thereon and residing thereon .... Property included in the homestead must be actually intended or used as a principal home for the owner.

When these conditions are met, the Idaho Code provides for a $50,000.00 automatic exemption.[5] The exemption is "automatic" in that the debtor need not file of record a "declaration" of homestead in order to gain the benefit of the statute.

◼ The homestead exemption statutes are to be liberally construed in favor of the debtor. *In re Olsen*, 93 I.B.C.R. 130, 131 (Bankr.D.Idaho 1998); *In re Peters*, 168 B.R. 710, 711, 94 I.B.C.R. 44 (Bankr.D.Idaho 1994); *Millsap*, 122 B.R. at 579, 91 I.B.C.R. at 7.

**3.** The Koopals' schedule I, executed June 17, 1998, reflects Mr. Koopal had been employed at the dairy for "6 months."

**4.** Mr. Koopal testified at hearing that, at bankruptcy, he and his family were living about half the time in Jerome and the other half in Priest River. Mrs. Koopal testified at the 341(a) meeting on August 17, according to the transcript of that meeting introduced as Exhibit 1, that they were living at her brother's dairy.

**5.** The maximum exemption that can be claimed is the lesser of the value of the land and improvements or $50,000.00. Idaho Code § 55-1003. Idaho Code § 55-1004(1) provides for automatic protection from and after the time the property is occupied as a principal residence by the owner.

■ If a homestead exemption is valid, a judgment lien is properly avoidable under § 522(f)(1)(A) as a judicial lien to the extent it impairs the exemption.[6]

The Creditors contend that the Koopals did not actually reside in the Priest River Property at the time of filing bankruptcy with the intent to make it their principal home, thus vitiating their claimed exemption. However, the Koopals did reside in the Priest River Property before the lien attached and before moving to Jerome, which established their homestead exemption in the property from and after the time the Koopals occupied it as their principal residence, § 55–1004(1), unless they later abandoned or lost it.

The Creditors alternatively contend exactly that: the Koopals lost their exemption due to abandonment. The Creditors rely on Idaho Code § 55–1006 which provides:

A homestead is presumed abandoned if the owner vacates the property for a continuous period of at least six (6) months. However, if an owner is going to be absent from the homestead for more than six (6) months but does not intend to abandon the homestead, and has no other principal residence, the owner may execute and acknowledge, in the same manner as a grant of real property is acknowledged, a declaration of nonabandonment of homestead and file the declaration for record in the office of the recorder of the county in which the property is situated. The declaration of nonabandonment of homestead must contain:

(1) A statement that the owner claims the property as a homestead, that the owner intends to occupy the property in the future, and that the owner claims no other property as a homestead;

(2) A statement of where the owner will be residing while absent from the homestead property, the estimated duration of the owner's absence, and;

(3) A legal description of the homestead property.

Idaho Code § 55–1006.

■ This Court has previously considered the issue. In *In re Cavanaugh*, 175 B.R. 369, 94 I.B.C.R. 219 (Bankr.D.Idaho 1994), Judge Hagan interpreted § 55–1006 as creating, after an absence of 6 months, a rebuttable presumption of abandonment. *Cavanaugh*, 175 B.R. at 372, 94 I.B.C.R. at 220. The Court there found that the debtors presented sufficient evidence to rebut that presumption. The issue here is whether the Koopals have likewise, upon the entirety of the record, sufficiently rebutted the presumption of abandonment that arises under § 55–1006.

■ There is no unequivocal evidence of an actual subjective intent to permanently abandon the Priest River Property. On the other hand, the conclusion that the Koopals firmly and always intended to reoccupy the Priest River Property after the Jerome job is equally unsupported. The testimony reflects, in essence, that the Koopals didn't give any thought one way or the other as to abandonment of the homestead. Their concern was much more practical. Mr. Koopal would go where work opportunities awaited him. His family would follow. If, after the 6 months of working at the dairy, additional employment was found near Jerome, it appears Mr. Koopal and his family would have stayed in southern Idaho. If no opportunities were found, the Koopals would return to Priest River or go elsewhere as economic need dictated. Any "intent" as to the abandonment or nonabandonment of the homestead is simply and solely an after-the-fact characterization, driven by the need to address the issue once the bankruptcy and the motion to avoid the judgment lien were filed, and the creditors' objection to the exemption was asserted.

Both the Koopals' and Creditors' counsel draw inferences regarding intent from the Koopals' actions. Perhaps not surprisingly, each side found support for their own interpretation from the same, mostly undisputed,

6. The Creditors do not contest that their judgment lien would here be avoidable as an impairment of the Koopals' homestead exemption, if the exemption is found valid.

facts. This only highlights the difficulty of ascribing intent based on a record which the Court finds is, at best, equivocal on the subject.[7]

The Koopals here vacated the Priest River Property for the six months prior to filing and put it up for sale. No declaration of nonabandonment was ever filed. Debtors did not dispute these points at hearing. In the language of § 55–1001(2), the Koopals and their children "resided and intended to reside" in Jerome for the first 6 months of 1998.

Still, their relocation lasted barely long enough to trigger operation of the presumption of § 55–1006. And while there is no direct evidence that the Koopals' intended in 1998 that the Priest River Property be a "permanent" residence,[8] they did not clearly forsake it. Their absence from north Idaho was only barely long enough to implicate § 55–1006, and the bankruptcy filing of June 25, with its assertion of a Priest River residence and claim of exemption, runs counter to that statute's presumption. More importantly, the Jerome house was clearly a temporary residence. The Koopals had no ownership interest in it. They could stay there only so long as the job at the dairy lasted, and the job had a planned duration of only six months. It would be unreasonable to assume an actual intent to abandon their previous domicile in exchange for such a short-term situation. This Court has previously upheld homestead exemptions despite "temporary absences." *Millsap*, 122 B.R. at 580–81, 91 I.B.C.R. at 7; *In re Tiffany*, 106 B.R. 213, 214, 89 I.B.C.R. 221, 222 (Bankr.D.Idaho 1989).

On the whole of the record, and in light of the accepted principals of construction of the exemption statutes in favor of debtors, the Court finds that the Koopals have sufficiently

rebutted the presumption of abandonment found in Idaho Code § 55–1006. The objection of USB and HSB to the homestead exemption is OVERRULED. Based thereupon, the Koopals' motion to avoid the judgment lien of the Creditors under § 522(f)(1)(A) is GRANTED. Counsel for the Koopals shall submit an appropriate order, consistent with the requirements specificity found in Local Bankruptcy Rule 4003.2(a).

---

**7.** It would be helpful, in cases such as these, if there were some corroborative circumstantial evidence of intent, as opposed to just *post hoc* testimonial declarations. For example, where the Koopals' children were and are registered for school might be indicative of where they intended to reside. In this case, unfortunately, the Koopals' children are home-schooled and not registered in any particular school district. Neither questioning by counsel or the Court gave rise to any persuasive, much less determinative corroborative evidence.

**8.** As noted by the Court in *In re Halpin*, 94 I.B.C.R. 197, 197, 1994 WL 594199 (Bankr.D.Idaho 1994), a debtor can have several residences, but only one "domicile", which is a residence the debtor intends to make a permanent home.